JUDGE RAMOS          14 CV 7912

Brian W. Brokate (BB 5830)
John Macaluso (JM 2058)
Walter-Michael Lee (WL 6353)
Maja Szumarska (MS 0208)
Gibney, Anthony & Flaherty, LLP
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile: (212) 688-8315
Attorney for Plaintiff



RECEIVED
SEP 30 2014
U.S.D.C. S.D.N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROLEX WATCH U.S.A., INC., | CASE NO. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| MICHAEL ADAM REED a/k/a ADAM REED and DRIFTSTL LLC, individually and collectively, d/b/a "ZIP TIE CLOTHING" and "JOHN DOES" 1-10, | |
| Defendants. | |

Plaintiff Rolex Watch U.S.A., Inc. ("Rolex") through its attorneys, complaining of defendant Michael Adam Reed a/k/a Adam Reed and DriftSTL LLC, individually and collectively, d/b/a "Zip Tie Clothing" and "John Does" 1-10 (hereinafter collectively referred to as "Defendants") hereby alleges as follows:

## STATEMENT OF THE CASE

1.     This is a suit by Rolex against Defendants for injunctive relief, statutory damages, treble damages and/or profits, compensatory damages, pre-judgment interest, attorneys' fees, investigators' fees and costs for trademark infringement, false designations of origin and false description and dilution. Defendants are being sued by Rolex as a result of Defendants' use of

Rolex's federally registered trademarks in association with Defendants' good and services without authorization from Rolex and with the intent to confuse the public to believe that they are authorized and/or endorsed by Rolex.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the federal trademark claims asserted in this action under 15 U.S.C. § 1121, and 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

3.    Defendants are subject to the Court's jurisdiction because they have committed the acts complained of herein in this District and do business in this District.

4.    Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## THE PARTIES

5.    Rolex is a corporation duly organized and existing under the laws of the State of New York, having an office and principal place of business at 665 Fifth Avenue, New York, New York, 10022.

6.    Upon information and belief, Michael Adam Reed a/k/a Adam Reed ("Reed") is a resident of the State of Missouri residing at 1600 Locust Street, #511, Saint Louis, MO 63103.

7.    Upon information and belief, DriftSTL LLC ("DriftSTL") is a Missouri limited liability company located at 1600 Locust Street, #511, Saint Louis, MO 63103.

8.    Upon information and belief, "Zip Tie Clothing" is a fictitious business entity under which Defendants are conducting business.  Defendants are the owners, operators and/or controlling forces behind "Zip Tie Clothing."

9.    Further, Reed and DriftSTL are the owners, operators, and controlling forces behind the websites www.ziptieclothing.bigcartel.com (the "Zip Tie Website") and www.driftstl.com (the "DriftSTL Website").

2

10. The identities of "John Does" 1-10 are not currently known to Rolex, but, upon information and belief, they are associated with Defendants and materially contribute to its infringement of Rolex's rights. Rolex will identify these John Does upon further knowledge and investigation and will amend its pleadings accordingly.

## FACTUAL ALLEGATIONS

### A. Rolex's Famous Products and Trademarks

11. Rolex is the exclusive distributor and warrantor in the United States of Rolex watches, all of which bear one or more of the Rolex Registered Trademarks as defined below.

12. Rolex watches are identified by the trade name and trademark ROLEX and one or more of the Rolex Registered Trademarks.

13. Rolex is responsible for assembling, finishing, marketing and selling in interstate commerce high quality Rolex watches, watch bracelets and related products for men and women (hereinafter referred to as "Rolex Watches").

14. Rolex is responsible for maintaining control over the quality of Rolex products and services in this country.

15. Rolex has developed an outstanding reputation because of the uniform high quality of Rolex Watches and the Rolex Registered Trademarks are distinctive marks used to identify these high quality products originating with Rolex.

16. Rolex owns numerous trademarks, including, but not limited to, the trademarks and trade names ROLEX and the CROWN DEVICE (design).

17. Rolex is the owner of, including but not limited to, the following federal trademark registrations in the U.S. Patent and Trademark Office:

| Trademark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| ♛ CROWN DEVICE | 657,756 | 1/28/58 | Timepieces of all kinds and parts thereof. |
| ROLEX | 101,819 | 1/12/15 | Watches, clocks, parts of watches and clocks, and their cases. |

Correct and true copies of Rolex's federal trademark registrations (hereinafter collectively referred to as the "Rolex Registered Trademarks") are attached hereto as **Exhibit 1**.

18.    The Rolex Registered Trademarks are arbitrary and fanciful and are entitled to the highest level of protection afforded by law.

19.    Rolex and its predecessors have used the Rolex Registered Trademarks for many years on and in connection with Rolex Watches and related products.

20.    Based on Rolex's extensive advertising, sales and the wide popularity of Rolex products, the Rolex Registered Trademarks are now famous and have been famous since well prior to the activities of the Defendants complained of herein.  Rolex Registered Trademarks have acquired secondary meaning so that any product or advertisement bearing such marks is immediately associated by consumers, the public and the trade as being a product or affiliate of Rolex.

21.    Rolex has gone to great lengths to protect its name and enforce the Rolex Registered Trademarks.

22.    The Rolex Registered Trademarks are valid and subsisting and in full force and effect and have become incontestable pursuant to 15 U.S.C. § 1065.

B. **Defendants' Infringing Activities**

23.    Rolex hereby incorporates all prior allegations by reference.

24.     Upon information and belief, long after Rolex's adoption and use of the Rolex Registered Trademarks on its products and after Rolex's federal registration of the Rolex Registered Trademarks, Defendants, in bad faith, promoted and advertised in interstate commerce, through the Internet and in person, events using the Rolex Registered Trademarks. Similarly, Defendants began selling, offering for sale, distributing, promoting and advertising in interstate commerce, through the Internet, through e-mail and in person, merchandise bearing infringements of the Rolex Registered Trademarks as those marks appear on Rolex's products and as shown in the Rolex Registered Trademarks attached hereto as **Exhibit 1**.

25.     Since 2012, Defendants have hosted a series of events entitled the "BROLEX Drift Car Series." Defendants have promoted their events and distributed materials that use a design comprising of the word "BROLEX" in capital letters positioned below a crown design confusingly similar, if not identical, to the Rolex Crown Design (hereinafter referred to as the "BROLEX Design").

26.     DriftSTL is a company dedicated to organizing, promoting and hosting "drifting" sporting events for racecar drivers.   "Drifting" is a driving technique where the driver intentionally over steers, causing loss of traction in the rear wheels or all tires, while maintaining control of the vehicle.

27.     On or about July 13, 2012, there was a discussion on the DriftSTL forum about the creation of banners for the vehicles registered to race in the "BROLEX" events.   A user named "K'netic" asked the other users for input on the design of the banner.  He stated, "(BTW, the banner will be gold on black) So obviously, the 'BROLEX' large in the middle with a Rolex crown on one side, maybe both." He further stated, "Just talked to [Reed], banners are a go! We're just gonna keep it simple.  Solid black background with BROLEX in gold."

28.     According to a forum on the DriftSTL Website, Defendants named their "drifting" sporting events after the "Rolex 24 Hour Daytona", which is an endurance race held annually at the Daytona International Speedway in Daytona Beach, Florida.  Rolex is the title sponsor of the race and winning drivers receive a Rolex Daytona watch.  Defendants are using the Rolex Registered Trademarks to increase attendance at their "drifting" sporting events.

29.     Reed also posted a photograph of his computer screen on www.instagram.com ("Instagram"), which shows how Defendants manipulated the Rolex Registered Trademarks to create the BROLEX design in order to make "some print ready logos."  A copy of the Instagram post is attached hereto as **Exhibit 2** and incorporated herein by reference

30.     Defendants are gaining significant income through hosting the "BROLEX" events.  Upon information and belief, on July 15, 2012, Defendants held an event entitled "BROLEX 12 (Several) Hour Drift Day" at Gateway Motorsports Park located in Madison, Illinois.   Defendants invited at least 2,251 individuals using the social media website www.facebook.com ("Facebook").  Defendants charged the following fees: (1) $75 to preregister for and participate in the event ($95 at the gate); (2) $20 to show one's vehicle; and (3) $10 admission for spectators.  Thirty-four individuals registered to participate in the event and at least five hundred (500) people attended the event.

31.     Defendants are using the ROLEX trademarks to promote their events without authorization from Rolex and with the intent to confuse the public to believe that they are authorized and/or endorsed by Rolex.  Defendants' conduct is clearly willful.

32.     Equally egregious still, Rolex learned that Defendants are distributing, offering for sale and selling merchandise, including but not limited to, t-shirts, posters, stickers and

sunglasses using infringements of the Rolex Registered Trademarks to promote Defendants' "drifting" sporting events on the Zip Tie Website, DriftSTL Website, Facebook and Instagram.

33.     For instance, Defendants boasted that their Facebook page "reached over 2,500 likes this week", posted a photograph of a pair of sunglasses bearing infringements of the Rolex Registered Trademarks and informed their Facebook followers that the "BROLEX" sunglasses are free at their events.   The "BROLEX" sunglasses are presently listed for sale for $5 on Facebook.  A copy of the Facebook post is attached hereto as **Exhibit 3** and incorporated herein by reference.

34.     Further, Defendants are offering, promoting, distributing, offering for sale and selling t-shirts bearing infringements of the Rolex Registered Trademarks ("Infringing T-shirts") through the Zip Tie Website.  Defendants describe the Infringing T-shirts on the Zip Tie Website as follows:

> From the infamous Many Hours of BROLEX Drift Car Series in St. Louis we get the BROLEX T-Shirt, sporting the fauxhawk crown logo. Rep it over a popped Lacoste, grab your Ray-Bans, jump in the Merk-Benz and go cruise the strip for some sorority girls.
>
> Make sure your fake wheels are polished for maximum panty dropping.

A sample of the Zip Tie Listing is attached hereto as **Exhibit 4** and incorporated herein by reference.

35.     On or about August 14, 2014, Rolex's investigator placed an order for one (1) Infringing T-Shirt for $15.00 from the Zip Tie Website.

36.     Rolex's investigator was instructed to issue payment to Defendants through their PayPal, Inc. ("PayPal") account, events@driftstl.com.  Rolex's investigator issued such payment.

37.     Defendants shipped the Infringing T-shirt to Rolex's investigator located in this District.

38.     On or about September 2, 2014, Rolex's investigator received the Infringing T-shirt.  Photographs of the Infringing T-shirt are attached hereto as **Exhibit 5** and incorporated herein by reference.

39.     The return address on the package containing the Infringing T-shirt states "Zip Tie Clothing, 1600 Locust St #511, St. Louis, MO 63103." "Zip Tie Clothing" is not an authorized business entity.  The fact that Defendants are clandestinely operating an unauthorized business entity further demonstrates that their infringement is willful.

40.     On or about September 9, 2014, Rolex's counsel sent a cease and desist letter to Defendants, via email and First Class Mail, warning them of the consequences of their trademark infringement and other unauthorized activities.

41.     On or about September 15, 2014, Defendants confirmed receipt of the cease and desist letter on www.twitter.com ("Twitter").  Defendants bragged to followers: "Official Rolex street cred certificate … a cease and desist."

42.     Despite receiving the cease and desist letter, Defendants' unauthorized activities concerning the Rolex Registered Trademarks continued.   Since Defendants were placed on notice concerning their unauthorized activities, there can be no doubt but that Defendants' infringement of the Rolex Registered Trademarks is willful.

43.     On or about September 18, 2014, Defendant's counsel called Rolex's counsel and advised them that the infringing merchandise was taken down from the Zip Tie Website.

44.     Subsequently, Rolex accessed Defendants' websites to confirm that the merchandise was taken off Defendants' websites.  Rolex learned that Defendants updated the

listing for the Infringing T-shirts.  Defendants renamed the Infringing T-shirts "NOLEX TEES" and adjusted the sales price to $30,000.  Defendants also replaced the previous photographs of the Infringing T-shirts with new photographs of individuals wearing the "BROLEX" T-shirts with the word "CANCELLED" placed over the photographs.

45.     Despite assurances from Defendants' counsel that the merchandise was no longer being offered for sale, to date, the "BROLEX" sunglasses are still listed for sale on Defendants' Facebook page.

46.     Upon information and belief, after receiving the cease and desist letter, on September 20, 2014, Defendants hosted a "drifting" sporting event at Gateway Motorsports Park. Reed continued to advertise his business by using the BROLEX design.

47.     It is clear, that despite receiving and responding to Rolex's cease and desist letter, Defendants' unauthorized activities concerning the Rolex Registered Trademarks has and will continue.

48.     Defendants once again updated the listing for the Infringing T-shirts on the Zip Tie Website to state "Apparently this t-shirt is kind of a big deal.  We're international now. Bitches."

49.     Defendants' continued unauthorized use of the Rolex Registered Trademarks and their blatant disregard for Rolex's intellectual property rights further evidence that Defendants' infringement of the Rolex Registered Trademarks is willful.

50.     Defendants have published and placed into circulation of the general public advertisements that infringe Rolex's intellectual property rights and caused other damages not relating to the infringement.

C. **Summary of Defendants' Illegal Activities**

51.     Defendants intentionally, maliciously and willfully sold, offered for sale, distributed, promoted and advertised admission to "drifting" sporting events using the Rolex Registered Trademarks, despite knowledge that such actions are unauthorized.   Similarly, Defendants were selling, offering for sale, distributing, promoting and advertising merchandise bearing infringements of the Rolex Registered Trademarks.

52.     Defendants' acts were calculated to confuse and to deceive the public and are performed with full knowledge of Rolex's rights.

53.     Defendants are not now, nor have they ever been, associated, affiliated, connected with, endorsed or sanctioned by Rolex.

54.     Rolex has never authorized or consented in any way to the use by Defendants of the Rolex Registered Trademarks or marks confusingly similar thereto.

55.     Defendants' use of the Rolex Registered Trademarks or marks substantially indistinguishable and/or confusingly similar thereto, is likely to cause consumers, the public and the trade to erroneously believe that the events hosted by Defendants are authorized, sponsored or approved by Rolex, even though they are not.   This confusion causes irreparable harm to Rolex and weakens and dilutes the distinctive quality of the Rolex Registered Trademarks.

56.     Similarly, Defendants' use of the Rolex Registered Trademarks or marks substantially indistinguishable and/or confusingly similar thereto, is likely to cause consumers, the public and the trade to erroneously believe that the products provided by Defendants emanate or originate from Rolex, and/or that said products are authorized, sponsored, or approved by Rolex, even though they are not.   This confusion causes irreparable harm to Rolex and weakens and dilutes the distinctive quality of the Rolex Registered Trademarks.

57.     By using infringements of the Rolex Registered Trademarks on the promotional materials for their events and on their goods, Defendants are trading on the goodwill and reputation of Rolex and creating the false impression that Defendants' goods are affiliated with Rolex.

58.     Defendants have been unjustly enriched by illegally using and misappropriating Rolex's intellectual property for their own financial gain.  Furthermore, Defendants have unfairly benefited and profited from Rolex's outstanding reputation for high quality products and its significant advertising and promotion of Rolex watches and the Rolex Registered Trademarks.

59.     Defendants have disparaged Rolex, its Rolex Registered Trademarks and its products by creating a false association with Rolex, its genuine goods and its Rolex Registered Trademarks.

60.     Rolex has no control over the nature and quality of the events held by Defendants and the products they distribute, which bear infringements of the Rolex Registered Trademarks.

61.     Among other things, Defendants' promotion, advertisement and provision of its goods have and will reflect adversely on Rolex as the believed source of origin thereof; hamper continuing efforts by Rolex to protect its outstanding reputation for high quality, originality and distinctive goods; and tarnish the goodwill and demand for genuine Rolex watches and products.

62.     Upon information and belief, Defendants have acted with reckless disregard for Rolex's rights and/or was willfully blind in connection with unlawful activities.   Upon information and belief, Defendants have willfully and maliciously engaged in infringing activities.   Therefore, this case constitutes an exceptional case under 15 U.S.C. § 1117(a).

63.     Rolex has suffered irreparable harm and damages as a result of Defendants' conduct.  The injuries and damages sustained by Rolex have been directly and proximately caused by the Defendants' wrongful actions.

64.     Rolex has no adequate remedy at law.

65.     Defendants' wrongful acts will continue unless enjoined by the Court. Accordingly, Defendants must be restrained and enjoined from any further infringement of the Rolex Registered Trademarks.

### FIRST CLAIM FOR RELIEF
### Trademark Infringement (15 U.S.C. § 1114)

66.     Rolex hereby incorporates by reference all prior allegations as though fully set forth herein.

67.     Based on Rolex's extensive advertising under the Rolex Registered Trademarks, its extensive sales and the wide popularity of Rolex watches, the Rolex Registered Trademarks have acquired a secondary meaning so that any product and advertisement bearing such trademarks is immediately associated by purchasers and the public as being a product and affiliate of Rolex.

68.     Defendants' activities constitute Defendants' use in commerce of the Rolex Registered Trademarks.  Defendants used the Rolex Registered Trademarks in connection with Defendants' sale, offers of sale, distribution, promotion and advertisement of their goods bearing infringements of the Rolex Registered Trademarks.

69.     Defendants have used the Rolex Registered Trademarks, knowing they are the exclusive property of Rolex, in connection with the sale, offers for sale, distribution, promotion and advertisement of their goods bearing infringements of the Rolex Registered Trademarks.

70.     Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Rolex to use the Rolex Registered Trademarks to advertise, manufacture, distribute, appraise, offer for sale or sell products bearing the Rolex Registered Trademarks when Defendants are not so authorized.

71.     Defendants engage in the aforementioned activity with the intent to confuse and deceive the public into believing that they and the events they hold and products they sell are in some way sponsored, affiliated or associated with Rolex, when in fact they are not.

72.     Defendants' use of the Rolex Registered Trademarks has been without the consent of Rolex, is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and does falsely create the impression that the goods advertised, promoted, distributed and sold by Defendants are warranted, authorized, sponsored or approved by Rolex when, in fact, they are not.

73.     Defendants' unauthorized use of the Rolex Registered Trademarks has resulted in Defendants unfairly benefiting from Rolex's advertising and promotion, and profiting from the reputation of Rolex and the Rolex Registered Trademarks, to the substantial and irreparable injury of the public, Rolex and the Rolex Registered Trademarks and the substantial goodwill represented thereby.

74.     Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

75.     By reason of the foregoing, Defendants are liable to Rolex for: (a) an amount representing three (3) times Rolex's damage and/or their illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.3

## SECOND CLAIM FOR RELIEF
### (Federal Trademark Dilution, 15 U.S.C. §1125(c))

76.     Rolex hereby incorporates by reference all prior allegations as though fully set forth herein.

77.     Defendants' use of the Rolex Registered Trademarks or marks confusingly similar thereto in order to sell their products constitutes Defendants' commercial use in commerce of the Rolex Registered Trademarks.

78.     The Rolex Registered Trademarks are world famous and distinctive.

79.     Defendants' use of the Rolex Registered Trademarks to advertise unauthorized merchandise and services constitutes tarnishment and dilution of the Rolex Registered Trademarks.

80.     Rolex is suffering and will continue to suffer irreparable harm from the Defendants' dilutive activities.

81.     Defendants' acts as aforesaid are diluting the distinctive quality of the Rolex Registered Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

82.     Defendants have intentionally and willfully appropriated the Rolex Registered Trademarks and traded on Rolex's reputation.

83.     Defendants' wrongful acts of dilution will continue unless enjoined by this Court.

### THIRD CLAIM FOR RELIEF
### (Unfair Competition, False Designation of Origin & False Description, 15 U.S.C. § 1125(a))

84.     Rolex hereby incorporates by reference all prior allegations as though fully set forth herein.

85.     In connection with Defendants' advertisement, promotion, distribution, offers of sale and sale of their goods and services, Defendants have used the Rolex Registered Trademarks in commerce.

86.     In connection with Defendants' advertisement, promotion, distribution, offers of sales and sales of their goods, Defendants have affixed, applied and/or used false designations of origin and false and misleading descriptions and representations, including the ROLEX trademark and other Rolex Registered Trademarks, which tend falsely to describe the origin, sponsorship, association or approval by Rolex of the goods Defendants sell.

87.     Defendants have used the Rolex Registered Trademarks with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Rolex.

88.     Defendants' use of the Rolex Registered Trademarks on their websites and on their goods bearing infringements of the Rolex Registered Trademarks constitutes false descriptions and representations tending falsely to describe or represent Defendants, their products and the products contained in the posters as being authorized, sponsored, affiliated or associated with Rolex.

89.     Defendants have used the Rolex Registered Trademarks on their websites and on their goods with the express intent to cause confusion and mistake, to deceive and mislead the public, to trade upon the reputation of Rolex and to improperly appropriate to themselves the valuable trademark rights of Rolex.  Defendants' acts constitute unfair competition under federal law.

90.     Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly

describe and/or represent their products as those of Rolex in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). These acts constitute unfair competition.

## PRAYER FOR RELIEF

**WHEREFORE**, Rolex respectfully requests that the Court order the following relief:

I.     That the Court enter an injunction ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them be enjoined and restrained from:

(a)     using any reproduction, copy, or colorable imitation of the Rolex Registered Trademarks to identify any events, goods or the rendering of any services not authorized by Rolex;

(b)     engaging in any course of conduct likely to cause confusion, deception or mistake, or injure Rolex's business reputation or weaken the distinctive quality of the Rolex Registered Trademarks, Rolex's name, reputation or goodwill;

(c)     using a false description or representation including words or other symbols tending to falsely describe or represent themselves or their unauthorized goods as being those of Rolex or sponsored by or associated with Rolex and from offering such goods in commerce;

(d)     further infringing or diluting the Rolex Registered Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products not authorized by Rolex bearing any simulation, reproduction, copy or colorable imitation of the Rolex Registered Trademarks;

(e)     using "BROLEX" in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products or services in such fashion as to relate or connect, or tend to relate or connect, such products or services in any way to Rolex, or to any services or goods sold, manufactured, sponsored or approved by, or connected with Rolex;

(f)     using any simulation, reproduction, copy or colorable imitation of the Rolex Registered Trademarks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as

to relate or connect, or tend to relate or connect, such products in any way to Rolex, or to any goods sold, manufactured, sponsored or approved by, or connected with Rolex;

(g)     making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services provided, products manufactured, distributed, sold or offered for sale, or rented by Defendants are in any way associated or connected with Rolex, or are provided, sold, manufactured, licensed, sponsored, approved or authorized by Rolex;

(h)     engaging in any conduct constituting an infringement of any of the Rolex Registered Trademarks, of Rolex's rights in, or to use or to exploit, said trademark, or constituting any weakening of Rolex's name, reputation and goodwill;

(i)     using or continuing to use the Rolex Registered Trademarks or trade names in any variation thereof on the Internet (either in the text of a website, as a domain name, or as a keyword, search word, metatag, or any part of the description of the site in any submission for registration of any Internet site with a search engine or index) in connection with any goods or services not directly authorized by Rolex;

(i)     hosting or acting as Internet Service Provider for, or operating or engaging in the business of selling any website or other enterprise that offers for sale any products bearing the Rolex Registered Trademarks;

(j)     acquiring, registering, maintaining or controlling any domain names that include the ROLEX trademark or any of the other Rolex Registered Trademarks or any marks confusingly similar thereto, activating any website under said domain names, or selling, transferring, conveying, or assigning any such domain names to any entity other than Rolex;

(k)     using any e-mail addresses to offer for sale any nongenuine products bearing counterfeits of the Rolex Registered Trademarks;

(l)     having any connection whatsoever with any websites that offer for sale any merchandise bearing counterfeits of the Rolex Registered Trademarks;

(m)     secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising,

promoting, or displaying of all unauthorized products which infringe the Rolex Registered Trademarks; and

(n)     effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (m).

II.     That Defendants, within ten (10) days of judgment, take all steps necessary to remove from all websites owned, operated or controlled by the Defendants, all text or other media offering for sale any merchandise bearing the Rolex Registered Trademarks, or marks substantially indistinguishable therefrom.

III.    That Defendants, within thirty (30) days of judgment, file and serve Rolex with a sworn statement setting forth in detail the manner and form in which they have complied with this injunction pursuant to 15 U.S.C. § 1116(a).

IV.     That Defendants be required to deliver up for destruction to Rolex all unauthorized materials bearing any of the Rolex Registered Trademarks in association with unauthorized goods or services and the means for production of same pursuant to 15 U.S.C. § 1118.

V.      That Defendants not operate nor use any websites that offer for sale and/or sell any merchandise bearing infringements of the Rolex Registered Trademarks.

VI.     Requiring Defendants to pay to Rolex such damages Rolex has sustained as a consequence of their infringement of the Rolex Registered Trademarks and to account for all gains, profits and advantages derived by Defendants from the sale of their infringing merchandise bearing the Rolex Registered Trademarks, and that the award to Rolex be trebled as provided for under 15 U.S.C. § 1117.

VII.    Ordering that Rolex recover the costs of this action, together with reasonable attorneys' and investigators' fees and pre-judgment interest in accordance with 15 U.S.C. § 1117.

VIII.   Directing that this Court retain jurisdiction of this action for the purpose of enabling Rolex to apply to the Court at any time for such further orders and interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

IX.    Ordering that pursuant to 11 U.S.C. § 523(a)(6), Defendants be prohibited from a discharge under 11 U.S.C. § 727 for malicious, willful and fraudulent injury to Rolex.

X.     Due to the advertising injury caused to Rolex, Defendants be required to deliver to Rolex for destruction, all goods that were being advertised, promoted or offered for sale, as well as any and all catalogs, circulars, or other printed material in their possession or control displaying or promoting the infringing goods that were or are being advertised, promoted, or offered for sale.

XI.    Awarding to Rolex such other and further relief as the Court may deem just and proper, together with the costs and disbursements that Rolex has incurred in connection with this action.

**GIBNEY, ANTHONY & FLAHERTY LLP**

Dated: September 30, 2014                    By:

Walter-Michael Lee (WL 6353)
Gibney, Anthony & Flaherty, LLP
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile: (212) 688-8315
Attorney for Plaintiff